JOEL D. SIEGEL (Bar No. 155581)
joel.siegel@dentons.com
PAUL M. KAKUSKE (Bar No. 190911)
paul.kakuske@dentons.com
POOJA L. SHAH (Bar No. 330550)
pooja.l.shah@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

PETER Z. STOCKBURGER (*Pro Hac Vice* forthcoming)
peter.stockburger@dentons.com
DENTONS US LLP
4655 Executive Drive, Suite 700
San Diego, CA 92121
Tel: (619) 236-1414 / Fax: (619) 232-8311

Attorneys for Defendant
DINE BRANDS GLOBAL, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELLA HERNANDEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DINE BRANDS GLOBAL, INC., a Delaware Corporation<br><br>Defendant. | Case No. 3:23-cv-00786-BEN-BGS<br><br>**DEFENDANT DINE BRANDS GLOBAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Date:      August 21, 2023 (Reserved)<br>Time:      10:30 a.m.<br>Courtroom: 5A<br>Judge:     Hon. Roger T. Benitez |

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

# **TABLE OF CONTENTS**

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**Page**

I.   INTRODUCTION ..........................................................................................1

II.  BACKGROUND ...........................................................................................3

III. LEGAL STANDARD ....................................................................................4

IV. ARGUMENT .................................................................................................5

    A.   Plaintiff Does Not Plausibly Allege That Dine is a Video Tape Service Provider. ...............................................................................5

    B.   Plaintiff Is Not a "Consumer" Under the VPPA .............................8

    C.   Dine Did Not "Knowingly Disclose" Plaintiff's Personally Identifiable Information ...............................................................10

        1.   The Alleged Disclosure Did Not Identify Plaintiff ...............10

        2.   Plaintiff Does Not Allege the Specific Video She Watched Was Disclosed ...........................................................13

  V.   THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND ...............................................................................15

VI. CONCLUSION ............................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 4, 5

*Austin-Spearman v. AMC Network Ent. LLC*,
    98 F.Supp.3d 662 (S.D. N.Y. 2015) .......................................................... 9

*Byars v. Hot Topic, Inc.*,
    ---F.Supp.3d----, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ............... 2

*Carroll v. Gen. Mills, Inc.*,
    CV 23-1746, 2023 WL 4361093, (C.D. Cal. June 26, 2023)..................... 8

*Carter v. Scripps Network*,
    --- F.Supp.3d ----, 2023 WL 3061858 (S.D.N.Y April 24, 2023)............. 9

*Crytek GmbH v. Cloud Imperium Games Corp.*,
    No. CV 17-8937, 2018 WL 9491965 (C.D. Cal. Dec. 6, 2018)................. 6

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ................................................................... 15

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ....................................................... 10, 11, 12

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ................................................................... 5

*In re Hulu Priv. Litig.*,
    2012 WL 3282960 (N.D. Cal. Aug. 10, 2012)......................................... 7

*In re Hulu Privacy Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015)................................................... 12

*Hunthausen v. Spine Media, LLC*,
    ---F.Supp.3d----, 2023 WL 4307163 (June 21, 2023)............................ 9

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Jefferson v. Healthline Media*,
    No. 22-CV-05059, 2023 WL 3668522 (N.D. Cal. May 24, 2023) ...................... 9

*Licea v. Caraway Home Inc.*,
    ---F.Supp.3d----, 2023 WL 1999496 (C.D. Cal. Feb. 9, 2023) ........................... 2

*Martin v. Meredith Corp*
    ---F.Supp.3d----, 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) ............ 12, 13, 14

*Mollett v. Netflix, Inc.*,
    No. 11-CV-01629, 2012 WL 3731542 (N.D. Cal. Aug. 17, 2012).................... 13

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ........................................................................... 4

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3rd Cir. 2016) ......................................................................... 11

*Robinson v. Disney Online*,
    152 F. Supp.3d 176 (S.D.N.Y. 2015) ............................................................. 12

*Stark v. Patreon, Inc.*,
    --- F.Supp.3d ----, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022) ..................... 11

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ....................................................................... 13

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
    315 F.Supp.3d 1147 (C.D. Cal. 2018) .............................................................. 4

*In re Vizio, Inc., Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017)....................................................5, 6, 7

*White v. Samsung Elecs. Am., Inc.*,
    No. CV 17-1775, 2019 WL 8886485 (D. N.J. Aug. 21, 2019) .......................... 11

*Wilson v. Triller, Inc.*,
    598 F. Supp. 3d 82 (S.D.N.Y. 2022) .............................................................. 11

**Statutes**

18 United States Code

    § 2710(a)(1) ............................................................................................ 5, 8

    § 2710(a)(3) ..................................................................................... 5, 10, 13

    § 2710(a)(4) ...................................................................................... 5, 7, 8

    § 2710(b)(1) ......................................................................................... 2, 5

    § 2710 *et seq.* .......................................................................................... 1

**Rules and Regulations**

Federal Rules of Civil Procedure

    Rule 12(b)(6) ........................................................................................... 4

## I.     INTRODUCTION

Plaintiff Gabriella Hernandez's Complaint (Dkt. No. 1) is yet another unfounded attempt to stretch the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA") beyond all recognition.  Plaintiff is a self-proclaimed "consumer privacy advocate" who claims to work as a "tester" to ensure that companies comply with privacy laws.

In reality, counsel for Plaintiff has filed nearly a dozen copy-cat complaints asserting near identical boilerplate violations of the VPPA.[1]  Plaintiff and her counsel are eager to use the threat of immense statutory damages under the VPPA to try to extract settlements, by attempting to apply this statute to any website which displays only limited video content on its homepage, such as here with a seconds-long video clip of eggs benedict.  This Court should not condone this abuse of the VPPA and should dismiss the Complaint in its entirety with prejudice.[2]

_____

[1]  To date, counsel for Plaintiff have filed nearly a dozen cookie-cutter actions in California state and federal courts, each who claim without any specificity to have done no more than "visited" the websites of defendants at some unidentified time. *See, e.g. Munoz v. Peter Thomas Roth Labs, LLC*, No. 2:23-cv-03475 (C.D. Cal., filed May 7, 2023); *Munoz v. Belkin Int'l, Inc.,* No. 23STCV12438 (Cal. Sup. Ct. Los Angeles Cnty., filed June 2, 2023); *Munoz v. Cengage Learning, Inc.,* No. 23STCT12739 (Cal. Sup. Ct. Los Angeles Cnty., filed June 5, 2023); *Munoz v. Compassion Int'l*, No. 23STCV12470 (Cal. Sup. Ct. Los Angeles Cnty., filed June 2, 2023); *Munoz v. Fantasia Trading LLC*, No. 23STCV12871 (Cal. Sup. Ct. Los Angeles Cnty., filed June 5, 2023); *Cantu v. Adorama, Inc.*, No. 2:23-cv-2907 (C.D. Cal., filed April 18, 2023); *Munoz v. Paula's Choice, LLC.,* No. 2:23-cv-3426 (C.D. Cal., filed May 4, 2023); *Cantu v. Boardriders, Inc.,* No. 2:23-cv-03162 (C.D. Cal., filed April 26, 2023); *Hernandez v. Yeti Coolers LLC*, No. 3:23-cv-00798 (S.D. Cal., filed May 2, 2023); *Cantu v. Fossil Group, Inc.,* No. 2:23-cv-03337 (C.D. Cal., filed May 2, 2023).

[2]  District Courts considering similar serial copy-paste complaints filed by this same Plaintiff's counsel have granted motions to dismiss where, as here, the complaint is written at "such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing" because "if a litigant pleads at

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

The VPPA was enacted in 1988, directly in response to the disclosure of Supreme Court Justice nominee, Judge Robert Bork's VHS rental history to a newspaper. The VPPA addresses a succinct and limited problem: the disclosure by video stores of a person's video rental or purchase history. Thus, the statute forbids a "video tape service provider" from "knowingly disclos[ing]" the "personally identifiable information" of its "consumer[s]." 18 U.S.C. 2710(b)(1).

Dine Brands Global, Inc. ("Dine") is the owner of the International House of Pancakes ("IHOP") brand and its publicly accessible website, www.ihop.com (the "Website") and operates and franchises IHOP restaurants through the United States. Plaintiff claims that this iconic *restaurant* brand has now violated the VPPA, a statute designed to protect one's *video rental or purchase history*. She claims she is a "consumer" under the VPPA solely because she bought an unspecified product at an unspecified time in the past from Dine. She further claims that Dine is a video tape service provider that disclosed her "personally identifying information" ("PII") to TikTok when she accessed the homepage of Dine's website where a video about eggs benedict was displayed.

Given the foregoing, it is no surprise that Plaintiff's single cause of action under the VPPA is fundamentally flawed, and her own allegations, even if true, show that she cannot meet the basic requirements for a VPPA claim as a matter of law. Specifically, Plaintiff's Complaint should be dismissed with prejudice on the following grounds:

---

such a high level of generality that it is possible to copy and paste a complaint word-for-word against a new defendant … then almost by definition he is pleading without the factual specificity necessary to state a claim for relief." *Byars v. Hot Topic, Inc*., ---F.Supp.3d----, 2023 WL 2026994, at *5 (C.D. Cal. Feb. 14, 2023) (dismissing a complaint brought under California's Invasion of Privacy Act by some of the same counsel in this suit which was one of numerous copy-pasted complaints); *Licea v. Caraway Home Inc*., ---F.Supp.3d----, 2023 WL 1999496, at *6 (C.D. Cal. Feb. 9, 2023) (same).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

First, Plaintiff fails to plead any facts, let alone facts, that plausibly establish Dine is a "video tape service provider" within the meaning of the VPPA. Because Dine is, as Plaintiff herself alleges, an entity that "specializes in breakfast-themed restaurants," not a video tape service provider within the meaning of the statute. Plaintiff's Complaint fails to even remotely allege this first prong, a core element, of a VPPA claim—a single seconds-long video clip on the homepage of the Website does not turn Dine into the modern-day Blockbuster.

Second, Plaintiff has no relationship with Dine as contemplated by the VPPA, the only relationship she has pled—the purchase of a restaurant's non-video good— does not suffice to give a plaintiff who later happens to come by a short video clip on the company's website any protections under the VPPA. Thus, the Complaint fails as Plaintiff is not a consumer of *audio visual materials* as to Dine.

Finally, Plaintiff has not plausibly alleged that Dine disclosed PII within the meaning of the VPPA, or that she requested or obtained the video from the homepage of Dine's Website. Allegations that a user's IP address, device and browser information was transmitted do not satisfy the VPPA's definition of PII. The screenshot provided in the Complaint does not show that the title of the video Plaintiff watched was disclosed to any entity, or that the video even has a title. Accordingly, Plaintiff's Complaint fails to plausibly allege, as required under the VPPA, that any alleged disclosed information permits an *ordinary* person to identify a specific individual's video watching *behavior*.

## II.    BACKGROUND

Plaintiff alleges Dine is an entity that "specializes in breakfast-themed restaurants" and "offers videos" to watch through its website, www.ihop.com (the "Website"). (Compl. ¶ 5.) She claims she "purchased products from [Dine] in the past." (*Id.* ¶ 23.) She does not allege when she purchased those products, which products she purchased, or even if these purchased products have any relationship to the Website. Nor does she allege any other relationship or information she

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 3 -

exchanged with Dine.  Instead, Plaintiff claims to be a "consumer privacy advocate" who visited the Website's homepage because she wanted to "learn[] more about the goods and services offered by Defendant" and to "ensure[] that companies abide by the privacy obligations imposed by federal law."  (*Id*. ¶ 24.)

Plaintiff alleges she has a TikTok account and that she watched a video allegedly titled "New Hand-Crafted Eggs Benedict" at the webpage https://www.ihop.com/en at some unidentified time.  (*Id*. ¶¶ 19–21.)  Plaintiff did not request or obtain this video, rather as Plaintiff alleges "[Dine] has configured [the] video on the webpage … to play upon viewing the page."  (*Id*. ¶ 20.)  In other words, the video began playing automatically when Plaintiff accessed the home page of the Website.  Plaintiff does not share whether she was logged into her TikTok account while she was visiting the Website's homepage.

Plaintiff claims the Website uses the TikTok Pixel (the "Pixel"), and that through the use of this Pixel "[Dine] has elected to track and report 'Page View' events to TikTok."  (*Id*. at ¶¶ 17, 21.)  Specifically, the Pixel allegedly tracks and reports to TikTok "Ad/Event information (information about the ad a TikTok user has clicked), Timestamp (the time that the page was viewed), the user's IP Address, and the user's device make, model, operating system, and browser information."  (*Id*. at ¶ 15.)  The Complaint does not allege that the Pixel shares whether any visitor to the Website's homepage watched the video rather than merely accessed the Website URL.

III.   **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A "threadbare" recitation of the elements of a cause of action does not suffice.  *Id*.  Neither do conclusory allegations or allegations that "merely track[] the language of the

- 4 -

1    statute[s] [themselves], without providing facts to substantiate the claimed legal

2    conclusions." *Ticketmaster L.L.C. v. Prestige Ent. W., Inc*., 315 F.Supp.3d 1147,

3    1175 (C.D. Cal. 2018); *see also In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055

4    (9th Cir. 2008) (courts should not accept as true "allegations that are merely

5    conclusory, unwarranted deductions of fact, or unreasonable inferences").  To survive

6    dismissal, Plaintiff must plead sufficient factual content that allows the Court to

7    "draw the reasonable inference that the defendant is liable for the misconduct

8    alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9    IV.    **ARGUMENT**

10          To state a claim for a VPPA violation, Plaintiff must plausibly allege (1) that

11    Dine is a "video tape service provider," (2) that Plaintiff is a "consumer," and (3)

12    that Dine knowingly disclosed Plaintiff's personally identifiable information,

13    including "specific video materials or services" Plaintiff "requested or obtained."

14    18 U.S.C. § 2710(a)(1), (a)(3)–(4), (b)(1).  Plaintiff's Complaint should be

15    dismissed because it fails to plead facts to support any of these elements.

16          **A.    Plaintiff Does Not Plausibly Allege That Dine is a Video Tape**

17                  **Service Provider.**

18          A video tape service provider is defined under the VPPA as "any person,

19    ***engaged in the business***, in or affecting interstate or foreign commerce, of rental,

20    sale, or delivery of prerecorded video cassette tapes or similar audio visual

21    materials…"  18 U.S.C. § 2710(a)(4) (emphasis added).  The Complaint contains no

22    allegations whatsoever that Dine is "engaged in the business" of rental, sale or

23    delivery of "similar audio visual materials."  This failure is not a mere pleading

24    deficiency, but rather the requirements imposed by the plain language of the statute.

25          Plaintiff's conclusory statement that Dine is a video tape service provider

26    simply because the homepage of the Website contains one, seconds-long video clip,

27    is not enough to transform that entity into one that is "engag[ed] in the business" of

28    delivering video.  (Compl. ¶ 35 (internal citations omitted.))  The statute does not

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 5 -

cover every company that merely delivers audio visual materials ancillary to its business.  The *In re Vizio, Inc., Consumer Privacy Litigation* court provided a framework for evaluating the scope of a video tape service provider under the VPPA as applied to websites.  *In re Vizio, Inc., Consumer Privacy Litig*., 238 F. Supp. 3d 1204, 1221–23 (C.D. Cal. 2017).  The court opined that the word "business" in the phrase "engaged in the business" of delivery of video content "connotes 'a particular field of endeavor,' i.e., a focus of the defendant's work."  *Id*. at 1221 (internal citations omitted).

Businesses which are only "peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *In re Vizio, Inc.*, 238 F. Supp. 3d at 1221-22.  For example, "a letter carrier who physically places a package that happens to contain a videotape into a consumer's mailbox" is not a video tape service provider because

> the letter carrier could not be characterized as "engaged in *the business*" of delivering video content because her job responsibilities are in no way tailored to delivering packages that contain videotapes as opposed to any other package.

*Id*. (emphasis in original).  To claim otherwise in the Internet age, would mean every website with *any* minimal animated features, advertising, or promotional content on its website would be per se violative of the VPPA.  This absurd and flawed reading of the VPPA, quite literally would mean a bank website with a moving stagecoach as part of its logo, would fall under the definition of a "video tape service provider" under the VPPA and violate the law, while a bank website with a fixed stagecoach image as part of its logo would not.  While "Congress intended to cover more than just the local video rental store," it could not have intended the definition to extend to defendants whose products are not "substantially involved in the conveyance of video content to consumers" and "significantly tailored to serve that purpose."  *In re Vizio, Inc.*, 238 F. Supp. 3d at 1221-22; *see also Crytek GmbH v. Cloud Imperium Games*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Corp.*, No. CV 17-8937, 2018 WL 9491965, at *4 (C.D. Cal. Dec. 6, 2018) (holding the term "engaged in the business" describes a far higher level of involvement than a single act.)  In other words, delivery of video content must be "a focus of the defendant's work."  *In re Vizio, Inc.*, 238 F. Supp. 3d at 1221-22.

Plaintiff's Complaint does not plausibly allege that Dine, an entity, in her own words, specializes in breakfast-themed restaurants (Compl. ¶ 5), is engaged in the business of renting, selling, or delivering audio-visual materials, as the VPPA requires.  Nor does Plaintiff allege that the focus of Dine's work—its "particular field of endeavor"—is delivering video content or that its products are substantially involved in the conveyance of video content, much less tailored to that purpose.  *In re Vizio, Inc.*, 238 F. Supp. 3d at 1221.  Nor could she.  Delivering a single seconds-long video on its Website's homepage is hardly the focus of Dine's business.  Dine's income comes from operating and franchising its restaurants, which prepare and serve food to restaurant patrons—*not videos*.  Dine Brands Global, Inc., SEC Ann. Rep. (Form 10-K) (March 1, 2023).  Indeed, the Website, which Plaintiff incorporates by reference through citations and screenshots (*see e.g.*, Compl. ¶¶ 20, 21, Dine's Request for Judicial Notice ("RJN"), Ex. A and B), provides no indication of any kind that Dine is anything other than an entity which operates breakfast-themed restaurants.  Simply making one video available on its Website's homepage, to promote a food product offered at its restaurant, does not make Dine a business "engaged in" the rental, sale or delivery of videos.

Not only is Dine not in the business of producing or renting videos, but the lone video referred to in the Complaint (Compl. ¶¶ 4, 19, 21, 27) is not in the category of  "prerecorded video cassette tapes or other similar audio visual materials" as the VPAA requires.  18 U.S.C. § 2710(a)(4).  The VPPA was passed in the context of renting full-length movies from brick-and-mortar video rental stores.  As the Senate Judiciary Committee explained "laser discs, open-reel movies, and CDI technolog[ies]" are similar audio visual materials to video cassette tapes.  S. Rep. No.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

100-599 (1988) at 12; *see In re Hulu Priv. Litig.*, 2012 WL 3282960, at *4-*6 (N.D. Cal. Aug. 10, 2012) ("similar audio visual materials" referred to the type of "video content, not … how that content was delivered").  The Senate Judiciary Committee expressed concern over the sharing of what users watch on television or on film (*see* S. Rep. No. 100-599 at 1-4), and such types of "audio visual materials" differ greatly from the one short video on the Website's homepage.  Plaintiff does not allege that Congress considered, or even intended, to regulate businesses whose websites contain a short promotional video.

The leap to making a "breakfast themed restaurant" a video tape service provider, solely from a seconds-long video of eggs benedict is a leap too far.  There is nothing to suggest that Dine's business is centered, tailored, or focused around providing and delivering audiovisual content.  *Carroll v. Gen. Mills, Inc.*, CV 23-1746, 2023 WL 4361093, at *3-*4 (C.D. Cal. June 26, 2023).  Plaintiff fails to state a claim under any reasonable reading of the VPPA.

## B.    Plaintiff Is Not a "Consumer" Under the VPPA

The VPPA protects the "consumer[s]" of a video tape service provider, and defines "consumer" to include "any renter, purchaser, or subscriber."  18 U.S.C. § 2710(a)(1).  Here, in an attempt to establish herself as a "consumer," Plaintiff makes only a single, vague allegation she "has purchased products from [Dine] in the past." (Compl. ¶ 23.)  This, however, is not enough to bring Plaintiff within the definition of "consumer" under the VPPA.

By its plain terms, the VPPA provides a right of privacy for consumers in a purchase (or rental, or subscription) of "prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4); *see also* 18 U.S.C. § 2710(a)(1) & (a)(4) (defining a "consumer" as, among other things, "a purchaser . . . of goods or services from . . . any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials").  The purpose of the VPPA is "[t]o preserve personal

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 8 -

privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials."  S. Rep. No. 100-599 at 1.  For example, the Senate Report which accompanied the VPPA, explains that "a department store that sells video tapes would be required to extend privacy protection to *only* those transactions involving the purchase of video tapes and not other products."  *Id*. at 12 (emphasis added).

Plaintiff only states she "has purchased products from [Dine] in the past" (Compl. ¶ 23), not from *Dine's Website*.  Thus, Plaintiff could have only plausibly made this unidentified purchase at a physical restaurant, i.e. a food item.  The purchase of a food item sold by a breakfast-themed restaurant, which is completely disconnected from the viewing of a video for free on a Website's homepage, does not create the necessary relationship because food is not a "good" or "service" within the meaning of VPPA.  And Plaintiff pleads no allegations to support she purchased, rented, or subscribed to any video on Dine's Website.  In *Carter v. Scripps Network*, --- F.Supp.3d ----, 2023 WL 3061858, at *6 (S.D.N.Y April 24, 2023), the court explained that courts must look at the text of a statute as a whole as a reasonable reader would, and emphasized that the most reasonable definition of "consumer" under the VPPA is a *renter, purchaser, or subscriber of audio visual materials*, not of any goods in general.  *Id*.  (finding "the definitions of 'consumer' and 'video tape service provider' are paired to some degree: renter with rental, purchaser with sale, and subscriber with delivery, all of which subsection (a)(4) applies to audio visual materials.")  In *Hunthausen v. Spine Media, LLC*, the court determined that "Section 2710(b)(1) provides for an action by a renter, purchases [or] subscriber of audio-visual materials, and <u>not</u> a broader category of consumers." *Hunthausen v. Spine Media, LLC*, ---F.Supp.3d----, 2023 WL 4307163, at *3 (June 21, 2023) (emphasis added); *see also Jefferson v. Healthline Media*, No. 22-CV-05059, 2023 WL 3668522, at *3 (N.D. Cal. May 24, 2023) (dismissing complaint because  allegedly signing up for Healthline's email list was not enough to make Jefferson a subscriber

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

under the VPPA); *Austin-Spearman v. AMC Network Ent. LLC*, 98 F.Supp.3d 662, 671 (S.D. N.Y. 2015) (dismissing complaint because "an individual must do more than simply take advantage of a provided service—even if doing so alone allows a provider to access her information—in order to have acted as a 'subscriber' of the provider.").

Accordingly, Plaintiff has not plausibly alleged that she is a "purchaser" for purposes of a VPPA violation, and thus is not a "consumer" under the VPPA. Plaintiff never alleges she purchased, rented or subscribed to any Dine video.  Nor could she.  Moreover, even if Plaintiff could satisfy the "purchaser" requirement through food purchases—which she cannot—Plaintiff has not even alleged when or where her purchases occurred, let alone that such purchases had any connection whatsoever to the Website.  Accessing the homepage of a publicly accessible and free website does not make Plaintiff a consumer under the VPPA.

### C. Dine Did Not "Knowingly Disclose" Plaintiff's Personally Identifiable Information

The VPPA covers the disclosure of "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  For a violation to occur, a video tape service provider must knowingly disclose (1) the consumer's identity; and (2) the identity of the specific video material's identity.

### 1. The Alleged Disclosure Did Not Identify Plaintiff

Under the VPPA, PII includes only information that "'readily permit[s] an *ordinary person* to identify a [particular individual as having watched certain videos].'"  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (emphasis in original).  The "'ordinary person' standard" adopted by the Ninth and Third Circuits "looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it" or to the "recipient's capabilities."  *Id*.  Thus, even if the defendant discloses the information to a

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 10 -

sophisticated technology company that can use "today's technology" to identify an individual using the data disclosed, the information will not constitute PII unless an "ordinary person" would also be able to "readily" do so.  *Id*. at 985-86; *see also Stark v. Patreon, Inc.*, --- F.Supp.3d ----, 2022 WL 7652166, at *7 (N.D. Cal. Oct. 13, 2022) ("The test is therefore whether an 'ordinary person' could use the [information the defendant] allegedly disclosed to identify individual users, not whether [the recipient of the information] could do so or whether [the defendant] knew that [the recipient] could do so.").

Here, Plaintiff alleges that the Defendant's Website "tracks and reports": (a) "Ad/Event information (information about the ad a TikTok user has clicked);" (b) "Timestamp (The time that the page was viewed);" (c) "the user's IP address;" (d) "the user's device make, model, and operating system;" and (e) unspecified "user data" that Plaintiff appears to imply is reflected in a "_ttp" browser cookie.  (Compl. ¶¶ 15, 20, Figure 1.)  This is exactly the kind of information that an "ordinary person" cannot "'readily'" use to identify anyone and is not PII under the VPPA. *Eichenberger*, 876 F.3d at 985 (quoting *In re Nickelodeon*, 827 F.3d at 290).

In fact, courts have already held that these kinds of "static identifiers do not constitute personally identifiable information" under the "ordinary person" test.  *See White v. Samsung Elecs. Am., Inc*., No. CV 17-1775, 2019 WL 8886485, at *4-*5 (D. N.J. Aug. 21, 2019) ("IP addresses, MAC addresses, and zip codes" are not PII). For example, in *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 281-82 (3rd Cir. 2016), the court held that an IP address is not PII, even in combination with at least ten other points of data which included "a user's browser and operating system settings, which comprise a so-called 'browser fingerprint'" allegedly so unique that "the odds of two people having the same browser fingerprint are 1 in 286,777," and "a computing device's 'unique device identifier.'"  The court concluded that "[t]o an average person, an IP address" and similar "digital identifiers" "would likely be of little help in trying to identify an actual person," and as a result, was not PII.  *Id.* at

- 11 -

283.  The very need to combine and decipher the alleged PII disclosed here, shows that an ordinary person could not readily determine Plaintiff's video viewing history. *See also Wilson v. Triller, Inc*., 598 F. Supp. 3d 82, 92 (S.D.N.Y. 2022) (finding that it is not enough to allege that an ID, a random set of numbers, is PII when "the third party must 'pair' [the numbers] with information from a user's . . . profile page, which may or may not contain various personal information about the user."); *Eichenberger*, 876 F.3d at 985-86 (holding device serial number is not PII because the disclosed information could not identify an individual unless it was combined with other data); *Robinson v. Disney Online*, 152 F. Supp.3d 176, 180–82 (S.D.N.Y. 2015) (holding that no VPPA violation occurred when Disney disclosed to a third party an individual's viewing history along with an anonymized serial number because the third party had to "'link[]' these disclosures with 'existing personal information' obtained elsewhere").

Even if, however, the information disclosed by the TikTok Pixel is determined to be PII, the Pixel's transmission of the information to TikTok does not qualify as a knowing disclosure of PII.  For the Pixel to transmit PII to TikTok, the website visitor must necessarily already have a TikTok account.  It is impossible for Dine to know whether each website visitor, including Plaintiff, has a TikTok account.  Thus, without this knowledge, Dine cannot possibly "knowingly disclose" any PII to TikTok.  Within the context of the VPPA, "the term 'knowingly' connotes actual knowledge." *In re Hulu Privacy Litig*., 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (observing that it is "not enough . . . that a disclosure be merely 'voluntary' in the minimal sense of the defendant's being 'aware of what he or she is doing'").

Plaintiff claims that "[Dine] knowingly disclosed Plaintiff's … PII … [to] use[] that data to build audiences on Tiktok and retarget them for its advertising campaigns."  (Compl. ¶ 39.)  This allegation wholly misses the mark.  Under the VPPA, Plaintiff must allege that the video service provider *actually* knew it was disclosing (1) the consumer's identity; (2) the specific video material's identity; and

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 12 -

(3) that the identified consumer "requested or obtained" that material.  *In re Hulu Privacy Litig.,* 86 F.Supp.3d at 1095.  *See also Martin v. Meredith Corp*---F.Supp.3d----, 2023 WL 2118074, at *4 (S.D.N.Y. Feb. 17, 2023).  There are simply no allegations that show Dine knowingly disclosed Plaintiff's PII.  This failure alone is fatal to her claim.  *See, e.g., Mollett v. Netflix, Inc*., No. 11-CV-01629, 2012 WL 3731542, at *4 (N.D. Cal. Aug. 17, 2012) (dismissing VPPA claim in part because it was unreasonable to infer knowing disclosure of PII from conclusory allegations).

## 2.   Plaintiff Does Not Allege the Specific Video She Watched Was Disclosed

Plaintiff also does not adequately allege that Dine disclosed the video she watched.  The Complaint itself shows that Dine "do[es] not disclose information showing that a person has 'requested or obtained specific video materials or services.'"  *Meredith Corp*., 2023 WL 2118074, at *3.

Under the statute, PII is defined as "information which identifies a person as having requested or obtained *specific* video materials or services from a video tape service provider."  18 U.S.C. § 2710 (a)(3) (emphasis added).  Plaintiff claims that the TikTok Pixel used on the webpage at the address https://www.ihop.com/en "notifies Tiktok [sic] every time someone watches a video on the Website along with … the title of the video watched."  (Compl. ¶ 22.)  Yet the allegations in the Complaint render this allegation implausible.

The screenshot which Plaintiff relies upon in her Complaint fails to show any TikTok Pixel disclosed any information whatsoever about the video or video title she allegedly watched on the homepage of the Website.  (Compl. ¶ 21, Fig. 2).  Nor does the Website URL or video show any video title.  (Compl. ¶ 21, Fig. 2; RJN Ex. A and B.)  Plaintiff's screenshot only shows that the Website sent a "Page View" event to TikTok, but this "Page View" event does not include the title of any video, or even

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

mention a video.[3]   (RJN Ex. A and C.)  Plaintiff, incredibly, fails to even share how she determined a title of a video which has no true title.  In fact, the only reference to "New Hand-Crafted Eggs Benedict" at all, are graphics within the video itself. (Compl. ¶ 21, Fig. 2; RJN Ex. A and B.)  Nothing in the TikTok Pixel Helper in any way indicates that this "Page" contained a video—much less that Plaintiff actually watched this video or that it was called "New Hand-Crafted Eggs Benedict." (Compl. ¶ 21, Fig. 2; RJN Ex. A and C.)  At best, Plaintiff has alleged a transmission of the "name of the webpage that [she] accessed," www.ihop.com/en.  *Meredith Corp.,* 2023 WL 2118074, at *3.

Moreover, "disclosing to a third party the title of the webpage does not reveal … whether the website visitor *requested or obtained* the video instead of merely reviewing an article on the page."  *Id.* (emphasis added).  Disclosure of a website's name and IP address, and device and browser information,

> leaves off essential information for a VPPA claim, including at least: (1) whether the webpage contains a video; (2) if so, the name of the "specific video materials" on the page; (3) whether there are multiple videos on the page and, if so, which "specific video materials" were requested or obtained by the website visitor; and (4) whether the website visitor "requested or obtained" any videos at all, or instead merely read an article on the webpage.

*Id.*

The "Page View" event at the crux of Plaintiff's claim simply does not show whether Plaintiff watched a video, let alone the title of that video Plaintiff incorrectly concludes was disclosed.  (Compl. ¶ 21, Fig. 2; RJN, Ex. A and C.)  The "Page View" only shows the Page URL, Load Time and Timestamp.  (*Id.*)  Nor would it be

---

[3]  The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998).

- 14 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  reasonable to infer that the alleged title "New Hand-Crafted Eggs Benedict" was

2  disclosed in the Website URL, https://www.ihop.com/en, given that the URL does

3  not reference a video in any form.  (Compl. ¶ 21, Fig. 2.)

4         Accordingly, given that the Website does not identify Plaintiff as having

5  watched any specific materials as required under the VPPA, she has failed to state a

6  claim.

## V.   THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

9         This Court should dismiss Plaintiff's claim without leave to amend because

10 Plaintiff cannot show that she can cure the defects in her pleading.  *Ebner v. Fresh,*

11 *Inc.*, 838 F.3d 958, 963 (9th Cir. 2016).  There is no amendment that can be

12 truthfully made to the Complaint that would allow Plaintiff to assert colorable

13 VPPA claims against Dine.

## VI.   CONCLUSION

15        In short, Plaintiff's Complaint fails to satisfy the core elements of a VPPA

16 claim.  She cannot plausibly allege Dine is (1) a video tape service provider under the

17 meaning of the VPPA; (2) that she is a consumer of audio visual materials as related

18 to Dine; and (3) that Dine knowingly disclosed any of her PII.  Under a plain reading

19 of the statute and under the facts as alleged, Plaintiff cannot articulate a viable VPPA

20 cause of action against Dine.  Thus, for the reasons above, this Court should grant

21 this motion and dismiss the case against Dine in its entirety, with prejudice.

22 Dated:  July 7, 2023                    DENTONS US LLP

24                                        By: */s/  Joel D. Siegel*
                                             Joel D. Siegel
25                                           Peter Z. Stockburger
                                             Paul M. Kakuske
26                                           Pooja L. Shah

27                                        Attorneys for Defendant
                                          DINE BRANDS GLOBAL, INC.

28 123959444

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300